IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NATHANIEL BAKER, # 289752,      *
                                *
        Plaintiff,              *
                                *
vs.                             *  CIVIL ACTION NO. 20-00058-CG-B
                                *
CYNTHIA STEWART, *et al.*,       *
                                *
        Defendants.             *

## REPORT AND RECOMMENDATION

Plaintiff Nathaniel Baker, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed an action under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). Upon careful review, it is recommended that this action be **DISMISSED without prejudice** prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), because Baker's amended complaint fails to state a claim upon which relief may be granted.

### I. Proceedings.

This action is before the Court for the screening of Baker's Court-ordered amended complaint (Doc. 12). After the original complaint was filed, the Court screened it pursuant to 28 U.S.C. § 1915(e)(2)(B) and found that the complaint failed to state a claim upon which relief could be granted. (Doc. 11 at 1). The

Court ordered Baker to file an amended complaint and advised him of the deficiencies in his original complaint and of the pleading requirements for stating an Eighth Amendment claim under 42 U.S.C. § 1983. (Id. at 2-15).

Baker's claims in the amended complaint arise from him being stabbed by other inmates at Holman Correctional Facility ("Holman") on November 5, 2019. (Doc. 12 at 4, 12). Baker names as Defendants Warden Cynthia Stewart, Assistant Wardens Terry Raybon and Mitchell, Lieutenants Johnny McNeal, McKenzie, and S. Dailey, and Correctional Officers J. Frye and E. Dailey. (Id. at 9-10).

According to Baker, on May 28, 2019, in Holman's A-Dorm, he was robbed of his canteen purchases and other personal items by inmates "brandishing" prison-made knives and was forced to leave the dorm at knifepoint. (Id. at 10-11). When he reached the exit, the cube officer did not acknowledge the situation for several minutes until these inmates said: "Get this rapist out of here before we kill him!" (Id. at 11). Baker went immediately to the shift commander's office, where he told Defendants McNeal and McKenzie about what had just transpired. (Id.). Defendant E. Dailey, who witnessed the incident, corroborated Baker's description of events. (Id.). Defendants McNeal and McKenzie allowed Baker to move to another dorm as their "solution" to the

incident.  (Id.).  Based on the advice of other inmates, Baker filed a claim for his property with the Alabama Board of Adjustment.[1]  (Id.).

On November 5, 2019, at approximately 8:00 p.m., Baker was approached by the same inmates who had robbed him on May 28, 2019. (Id. at 12).  These inmates "relieve[d]" Baker of his property again.  (Id.).  Because Baker "did not respond to the inmates," they began stabbing him.  (Id.).  Baker fought for his life for an estimated five to ten minutes and ran to B-Dorm's gate and screamed for help.  (Id.).  After a couple of minutes, Defendant Frye, the cube operator, opened the gate and closed it behind Baker.  (Id.). Defendant Frye did not "radio in" this disruption and emergency, which Baker believes is required.  (Id.).  Baker was "left no choice" but to walk in severe pain to the infirmary, from where he was transported to "USA Trauma Hospital" for treatment of a punctured lung, liver, and kidney damage.  (Id.).

When he returned to Holman, Baker was placed in the infirmary to recover.  (Id. at 12-13).  Defendant McNeal asked Baker if he could identify the inmates who attacked him so he would not have to be placed in segregation due to unknown enemies.  (Id. at 13). Baker responded that he could not identify the inmates because

---

1 Baker attached paperwork associated with his claim with the Alabama Board of Adjustment to his amended complaint as Exhibit A. (Id. at 11, 17-24, 26-29).

Defendant Frye had turned off the dorm's lights. (Id.). According to Baker, he told Defendant McNeal that he should not have to identify anyone because cameras are located throughout Holman. (Id.). Defendant McNeal advised Baker that "it wasn't [his] shift." (Id.). Baker remained in the infirmary for a week before he was placed in administrative segregation. (Id.). He asked Defendants McKenzie and McNeal for his property, but it was never returned to him. (Id.).

Baker stayed in administrative segregation from November 11, 2019 to February 6, 2020, when he was transferred to another institution. (Id.). Baker alleges that the conditions in administrative segregation were "harsh if not cruel." (Id.). The temperature "remained near freezing or below. The heat and air were being repaired at the time. [And] Baker was already in much pain from the injuries of the assault." (Id.).

Baker's specific allegations against the Defendants follow. Baker alleges that Defendant E. Dailey was deliberately indifferent to the substantial risk of serious harm to Baker based on the fact that he witnessed the events of May 28, 2019. (Id. at 25). He also alleges that Defendant McNeal, after being informed of the events of May 28, 2019, "remained indifferent" to a substantial risk of serious harm to him, which resulted in Baker being assaulted on November 5, 2019. (Id.). Baker contends that

Defendant McKenzie "remained indifferent after being informed of substantial risk of serious harm to [Baker and failed] to take reasonable measures to ensure Baker's safety." (Id. at 14). Defendant Frye is alleged to have "refus[ed] to intervene . . . on Nov. 5, 2019 while [Baker] was being assaulted . . . [and failed] to respond to his serious medical needs." (Id.). Baker also alleges that Defendant S. Dailey, as supervisor of the shift when he was assaulted, "kn[ew] or should have known of the substantial risk of serious harm to [him and failed] to take reasonable measures to ensure [his] safety." (Id.). He further alleges that Defendants Mitchell, Raybon, and Stewart "knew or should have known of the serious risk [of] substantial harm for [him] and remained deliberately indifferent." (Id. at 15). Baker contends that Defendants S. Dailey and McNeal's deliberate indifference to the events of November 5, 2019 resulted in his ongoing suffering in administrative segregation. (Id.).

For relief, Baker seeks a declaratory judgment that Defendants' acts and omissions violated the Constitution and laws of the United States, compensatory and punitive damages, and any additional relief the Court deems just, proper, and equitable. (Id. at 15-16).

## II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Baker is proceeding *in forma pauperis*, the Court is

reviewing his amended complaint (Doc. 12) pursuant to 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a complaint may be dismissed as "frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a right that clearly does not exist. Id. at 327.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal,

556 U.S. at 678.

When considering a *pro se* litigant's allegations, a court gives them a liberal construction, holding them to a more lenient standard than those drafted by an attorney. Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (citation and internal quotation marks omitted). Furthermore, a court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. Iqbal, 556 U.S. at 681. In addition, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

**III. Analysis.**

**A. Eighth Amendment Law.**

Section 1983 requires a plaintiff to causally connect a defendant's actions, omissions, customs, or policies to a deprivation of his constitutional or federal rights in order to state a § 1983 claim. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam); Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982). Thus, Baker must provide specific facts

showing how each Defendant violated his constitutional or federal rights in his complaint in order to establish such a causal connection.

Not only must Baker allege a causal connection against each Defendant and a violation of a constitutional or federal right, but he must also plead a claim against each Defendant that is plausible on its face, as described above. See Twombly, 550 U.S. at 557. This plausibility standard requires that the factual allegations nudge a claim from the conceivable to the plausible. Id. at 570. "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1254 (11th Cir. 2012). A complaint "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," though detailed factual allegations are not required. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

A claim based on an inmate being assaulted by another inmate arises under the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). Under the Eighth

Amendment, prison officials have a duty to protect inmates from violence at the hands of other inmates. _Id._ at 833. "[G]ratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objectiv[e] . . . ." _Id._ (second brackets in original and citation and internal quotation marks omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." _Id._ at 834.

The Eighth Amendment requires that two elements be met in order to state a claim. _Id._ The first element, the objective element, requires that the deprivation be objectively sufficiently serious; that is, when the claim is based on a failure to prevent harm such as an inmate assault, it must be shown that conditions posed "a substantial risk of serious harm." _Id._ The second element of an Eighth Amendment claim, the subjective element, requires that the prison official's "state of mind [be] one of 'deliberate indifference' to inmate health or safety." _Id._ (citations omitted).

The necessary state of mind to show deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other, [which courts] have routinely equated . . . with [criminal] recklessness." _Id._ at 836. This

state of mind is incorporated into the standard for showing deliberate indifference, which provides that a prison official cannot be held liable under the Eighth Amendment unless "the official knows of and disregards an excessive risk to inmate health or safety; [that is,] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838.

## B. May 28, 2019 Incident.

### 1. Defendant E. Dailey.

With respect to Defendant E. Dailey, he is alleged to have been deliberately indifferent to the substantial risk of serious harm to Baker when Dailey witnessed the events of May 28, 2019. (Doc. 12 at 25). The facts provided to support this claim are that after Baker reported the May 28th incident to Defendants McNeal and McKenzie in the shift commander's office, Defendant E. Dailey supported Baker's story because he had witnessed the entire incident. (See id. at 11). Baker does not allege that he suffered any bodily injury as a result of this incident.

In alleging an Eighth Amendment claim against Defendant E.

Dailey, Baker must demonstrate that "a substantial risk of serious harm" existed in order to satisfy the objective element. See Woodyard v. Ala. Dep't of Corr., 700 F. App'x 927, 933 (11th Cir. 2017) (per curiam).[2] However, it is only when the assault begins that "a substantial risk of serious harm exist[s]." See id. Because no assault occurred on May 28, 2019, the fact that Defendant E. Dailey did not intervene does not establish an Eighth Amendment violation. Moreover, Baker did not allege that Defendant E. Dailey was in a position to intervene. Cf. Johnson v. Boyd, 701 F. App'x 841, 846 (11th Cir. 2017) (per curiam) (an "officer has a duty to intervene if he observes a constitutional violation and is in a position to intervene").[3] Thus, Baker has failed to state a claim against Defendant E. Dailey.

### 2. Defendants McNeal and McKenzie.

Baker contends that after being informed of the events of May 28, 2019, Defendant McNeal remained indifferent to a substantial

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (2005).

[3] The Johnson court observed that it noted in its prior opinion in Johnson v. Boyd, 568 F. App'x 719, 722 n.2 (11th Cir. 2014) (per curiam), that a claim for failure to intervene has been recognized in the situation when an officer observes a fellow officer violating a constitutional right and is in a position to intervene, but that holding "has not been explicitly adopted to situations involving an officer observing a fight between inmates." 701 F. App'x at 846.

risk of serious harm to him because McNeal failed to take reasonable measures to ensure his safety, and this resulted in Baker being assaulted on November 5, 2019.[4] (Doc. 12 at 25). Baker similarly alleges that Defendant McKenzie "remained indifferent after being informed of substantial risk of serious harm to [Baker and failed] to take reasonable measures to ensure Baker's safety." (Id. at 14).

In support of his claims, Baker asserts that he reported the incident of inmates forcing him out of the dorm at knifepoint to Defendants McNeal and McKenzie in the shift commander's office. (Id. at 11). In response to the incident, Defendants McNeal and McKenzie moved Baker to another dorm at Holman. (Id.). Thus, Baker indicates that Defendants McNeal and McKenzie responded to the situation and removed him from potential harm by his unidentified assailants. Baker provides no specific allegations which suggest that the response by Defendants McNeal and McKenzie was unreasonable and not responsive to the situation. Thus, the Court finds that Defendants McNeal and McKenzie were not deliberately indifferent when they moved Baker to another dorm.

---

[4] This allegation is the only clear indication that Baker is connecting the incidents of May 28, 2019 and November 5, 2019. However, the only fact offered to support a connection between the two incidents is that the same unidentified inmates were involved in both incidents. Without a connection, claims arising out of these incidents should be brought in separate lawsuits. See Fed. R. Civ. P. 20(a).

Because he has not established the subjective element of deliberate indifference, Baker fails to state an Eighth Amendment claim against Defendants McNeal and McKenzie based on the May 28, 2019 incident.

## C. **November 5, 2019 Incident.**

### 1. **Defendant Frye.**

Baker contends that Defendant J. Frye failed to intervene when Baker was assaulted by inmates on November 5, 2019, and that he failed to respond to Baker's serious medical needs. (Id. at 14). According to Baker, on November 5, 2019, at approximately 8:00 p.m., the same unidentified inmates who had taken his property on May 28, 2019 took his property again, and when he did not respond to them, they began stabbing him. (Id. at 12). Baker contends that he fought for his life and ran to the exit gate, where he screamed for help. (Id.). After a couple of minutes, Defendant Frye, as cube operator for B-Dorm, opened the gate so Baker could leave, and then closed it behind him. (Id.). Defendant Frye did not report the disruption and the emergency by radio, as required. (Id.). Thus, Baker "was left with no choice but walk through severe pain" to the infirmary. (Id.). After he returned from the hospital, where he was treated for a punctured lung, liver, and kidney damage, Baker was placed in the infirmary, where Defendant McNeal asked him to identify his assailants. (Id.

at 12-13). Baker told him that he could not identify the assailants because Defendant "Frye had the dorm lights off", and that he should not have to identify anyone because there are cameras throughout the facility. (Id. at 13).

Baker's allegations against Defendant Frye for failure to intervene during the assault fail to state a plausible claim. Baker alleges that Defendant Frye was the cube operator for B-Dorm. (Id. at 12). He also alleges that he told Defendant McNeal that he could not see his assailants because the lights in his dorm were turned off.[5] (Id. at 13). It stands to reason that if Baker could not see who his assailants were despite fighting for his life with them for five to ten minutes, then the cube operator, Defendant Frye, who was farther away, could not see Baker's assailants or determine that a fight was underway. Accordingly, Baker does not state a plausible claim against Defendant Frye based on the November 5, 2019 assault by other inmates.

Turning to the medical claim against Defendant Frye, to prevail on a deliberate indifference to serious medical need claim,

---

[5] Baker offers no explanation for being unable to identify the inmates to Defendant McNeal but still being able to identify them in this lawsuit as the same inmates who deprived him of his property on May 28, 2019. Cf. Battle v. Cent. State Hosp., 898 F.2d 126, 130 n.3 (11th Cir. 1990) (per curiam) (stating that "allegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal" as frivolous).

a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). In this instance, "a serious medical need is determined by whether a delay in treating the need worsens the condition." Id. at 307. Baker indicates that he made it to the dorm's exit door without assistance and emerged from the dorm by himself without assistance. He further states that he made it under his own power to the infirmary. He does not indicate that he had difficulty walking, which would have been observable by Defendant Frye, or that he asked for assistance from Defendant Frye and was denied assistance. And, it appears there was very little time from his screaming at the gate until he left the dorm and headed to the infirmary. Thus, Defendant Frye's failure to notify the institution of the emergency or disturbance, which the Court presumes would be for the purpose of summoning other officers to escort Baker, as he did not explain, does not rise to the level of deliberate indifference. Rather, this claim sounds in negligence, at best, which is not a basis for liability under § 1983. Daniels v. Williams, 474 U.S. 327, 328 (1986) (the "negligent act of an official causing unintended loss of or injury to life, liberty, or property" is simply not implicated under the Constitution). Moreover, even assuming Frye

violated a regulation by not calling for assistance, not every violation by the state of its own regulations is a constitutional violation. <u>Smith v. State of Ga.</u>, 684 F.2d 729, 732 n.6 (11th Cir. 1982). Accordingly, Baker fails to establish the deliberate indifference element of an Eighth Amendment claim.[6] Moreover, considering another aspect of this claim, he did not allege that his injuries became more severe from the time Defendant Frye observed him until he arrived at the infirmary, where he received medical help. As a result, Baker has failed to state a plausible medical claim against Defendant Frye.

### 2. Defendant S. Dailey.

Baker alleges that Defendant S. Dailey was the supervisor of the shift during which he was "assaulted and [knew] or should have known of the substantial risk of serious harm to [Baker and] fail[ed] to take reasonable measures to ensure Baker's safety." (<u>Id.</u> at 14). Baker further alleges that S. Dailey was "responsible for the supervision of officers as well as the welfare of the inmates." (<u>Id.</u> at 10). He also alleges that S. Dailey was deliberately indifferent to the events of November 5, 2019, which resulted in Baker's ongoing suffering in administrative segregation. (<u>Id.</u> at 15).

---

[6] The Court is also mindful that Defendant Frye had the responsibility of maintaining his post in the face of a disturbance in Baker's dorm.

These allegations against Defendant S. Dailey lack concrete facts. Courts do not "accept as true a legal conclusion couched as a factual allegation," such as Baker's assertion that S. Dailey was responsible for the supervision of officers. See Twombly, 550 U.S. at 555. And "a formulaic recitation of the elements of a cause of action will not do" either, such as Baker's allegations of a "substantial risk of serious harm" and that Defendants were "deliberately indifferent." See id. Rather, there must be sufficient "factual allegations . . . to raise a right to relief above the speculative level." Id. Baker's allegations against Defendant S. Dailey are vague, conclusory, and lacking in facts, and they are therefore subject to dismissal for failure to state a claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).

Furthermore, Defendant S. Dailey, as a supervisor, cannot be held liable solely for the acts of a subordinate. See Monell v. Dep't of Social Serv., 436 U.S. 658, 691-92 (1978) (in a § 1983 action, the city could not be held liable either vicariously or under the theory of respondeat superior for the acts of an employee). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional

deprivation." Dolohite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996) (citations and internal quotation marks omitted). In the absence of facts reflecting the personal involvement of Defendant S. Dailey or a causal connection between S. Dailey's actions and a constitutional deprivation, Baker has failed to state a claim against Defendant S. Dailey for this alternate reason.

### 3. Defendants Mitchell, Raybon, and Stewart.

Baker alleges that Defendants Mitchell, Raybon, and Stewart were the wardens at Holman when his property was stolen on May 28, 2019 and when he was assaulted on November 5, 2019, and that these Defendants knew or should have known of the serious risk of substantial harm to him yet remained deliberately indifferent. (Doc. 12 at 15). Baker's use of the words "knew or should have known" is not sufficient to support a finding of deliberate indifference. See Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013) (per curiam). The use of the phrase "knew or should have known" is merely a recitation of an element of Baker's claim. See id. at 1251. Aside from his conclusory assertion, Baker provides absolutely no facts from which the Court could conclude that Defendants Mitchell, Raybon, and Stewart were each individually deliberately indifferent. Rather, Baker appears to be resting his claims against Mitchell, Raybon, and Stewart on the theory that they are responsible in their supervisory positions

18

for their subordinates' actions and failures to act.  As discussed *supra*, liability under § 1983 cannot be imposed against supervisors for the acts or failures to act by their subordinates under the theories of vicarious liability and *respondeat superior*.  See Monell, 436 U.S. at 691-92.  Thus, Baker has failed to state a plausible claim against Defendants Mitchell, Raybon, and Stewart.

**D.  November 11, 2019 - February 6, 2020.**

Baker also alleges that as a result of Defendant S. Dailey's and Defendant McNeal's "deliberate indifference to the events of Nov[ember] 5, 2019," he was subjected to ongoing suffering in administrative segregation in violation of the Eighth Amendment, which caused him "pain, suffering, physical injury, and emotional distress."  (Doc. 12 at 15).  Baker, who was already in pain from being stabbed, alleges that the conditions in administrative segregation were harsh, if not cruel.  (Id. at 13).  He further alleges that the "temp[erature] remained near freezing or below [and] [t]he heat and air were being repaired at the time."  (Id.).

Although Baker expresses that he experienced discomfort, he does not allege that he suffered an injury or ailment from the alleged conditions.  Baker does not include any allegations about the clothing he wore or his bedding, the length of time it took for the repairs to be made, or whether any substitute heat sources were used.  Also lacking is information about the exact or average

19

daily temperatures.

Furthermore, the allegations against Defendants S. Dailey and McNeal are conclusory and vague. No facts are provided concerning any actions that Defendant S. Dailey took or did not take that would culminate in a finding that Defendant S. Dailey was deliberately indifferent with respect to Baker's placement in the cell. Similarly, there are no facts alleged against Defendant McNeal showing he was deliberately indifferent with regard to Baker's placement in this particular cell. That is, the allegations do not show that Defendants S. Dailey and McNeal had any knowledge about the conditions of Baker's administrative segregation cell.

"Deliberate indifference" is not a fact; rather, it is an element of an Eighth Amendment cause of action that Baker must satisfy by *providing facts* that demonstrate deliberate indifference on the part of Defendant S. Dailey and Defendant McNeal. Here, the "deliberate indifference" alleged by Baker is a legal conclusion couched as a factual allegation. <u>See</u> <u>Twombly</u>, 550 U.S. at 555. Courts do not treat such a legal conclusion as a fact, nor do they accept as true such "a formulaic recitation of [one of] the elements of a cause of action." <u>See</u> <u>id.</u>

In his amended complaint, Baker's only other reference to administrative segregation is his assertion that Defendant McNeal

told him that if he could not identify the inmates who attacked him, he would have to be placed in administrative segregation because his enemies were unknown. (See Doc. 12 at 13). This allegation regarding administrative segregation does not suggest any knowledge that Defendants McNeal or S. Dailey may have had about the conditions in administrative segregation. In order to state a claim against Defendants McNeal and S. Dailey, Baker was required to allege facts demonstrating that these Defendants knew of the lack of heat and the other conditions impacting Baker's administrative segregation cell, and that these conditions were extreme. See Farmer, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838. Thus, the subjective component of an Eighth Amendment claim has not been met by Baker's allegations. Therefore, Baker has not stated a claim against Defendants S. Dailey and McNeal based on the

conditions of confinement in his administrative segregation cell.

**E. Return of Property Taken on November 5, 2019.**

Baker also alleges that he asked Defendants McKenzie and McNeal to return the property that his unidentified assailants took from him on November 5, 2019. (Doc. 12 at 13). This allegation is not sufficient to state a claim. As noted, Baker does not allege that he was deprived of his property by state officers. Instead, he contends that his property was taken by unidentified inmates. Therefore, he has not stated a claim under § 1983, which provides a remedy only for actions taken by state actors. See Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) ("A successful section 1983 action requires a showing that the conduct complained of []was committed by a person acting under color of state law . . . ."). Moreover, Baker has not referenced, and the Court is not aware, of any right arising under federal law that would impose a duty on Defendants McKenzie and McNeal to track down and retrieve Baker's property that was allegedly taken by unidentified inmates. Thus, Baker's claims against Defendants McKenzie and McNeal fail to state a claim upon which relief can be granted.[7]

---

[7] By comparison, the Court observes that "a random and unauthorized deprivation [by state actors] does not violate procedural due process if the state provides an adequate post-deprivation remedy." Carcamo v. Miami-Dade Cnty., 375 F.3d 1104, 1105 (11th Cir. 2004) (per curiam); see also Hudson v. Palmer, 468 U.S. 517,

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that this action be **DISMISSED without prejudice** prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), because Baker's amended complaint fails to state a claim upon which relief may be granted.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.

---

532-33 (1984). In such an instance, the deprivation of property did not occur without due process. <u>Id.</u> Some post-deprivation remedies that have been held to satisfy due process are administrative procedures such as the Alabama Board of Adjustment, <u>see</u> <u>Parratt v. Taylor</u>, 451 U.S. 541, 543-44 (1981), or ordinary state tort litigation procedures, <u>see</u> <u>Hudson</u>, 468 U.S. at 535.

23

In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **2nd** day of **February, 2021.**

_____/s/SONJA F. BIVINS_____
**UNITED STATES MAGISTRATE JUDGE**
